UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT JOHNSON,<br><br>    Plaintiff,<br><br>v.<br><br>TOP INVESTMENT PROPERTY LLC, a California Limited Liability Company; TOP AUTO REPAIR, INC., a California Corporation,<br><br>    Defendants. | No. 2:15-cv-0181 TLN DB<br><br>FINDINGS AND RECOMMENDATIONS |

This matter came before the undersigned on October 13, 2017, pursuant to Local Rule 302(c)(19), for hearing of plaintiff's motion for default judgment. (ECF No. 24.) Attorney Raymond Ballister appeared telephonically on behalf of the plaintiff. No appearance was made by, or on behalf of, any defendant. At that time oral argument was heard and the motion was taken under submission. In essence, plaintiff alleges defendants violated the American with Disabilities Act. (ECF No.1).

Having considered all written materials submitted with respect to the motion, and after hearing oral argument, the undersigned recommends that the motion for default judgment be granted as explained below.

////

# BACKGROUND

Plaintiff Scott Johnson initiated this action, through counsel, on January 23, 2015, by filing a complaint and paying the required filing fee. (ECF No. 1). Therein, plaintiff alleges that the defendants, Top Investment Property LLC, a California Limited Liability Company, and Top Auto Repair, Inc., a California Corporation, are the owners and operators of a business, Top Auto Repair. (Compl. (ECF No. 1) at 1-2.[1]) Plaintiff further alleges that the premises and facilities of "Top Auto Repair" failed to comply with Title III of the ADA, the California Unruh Civil Rights Act, and the California Disabled Persons Act regarding discrimination on the basis of disability. (Id. at 5-8.) The complaint also states a negligence cause of action. (Id. at 9.)

More than 180 days later, on July 24, 2015, the assigned District Judge issued an order for plaintiff's counsel to show cause as to why the complaint should not be dismissed for failure to serve the defendants within the time frame provided by Rule 4(m) of the Federal Rules of Civil Procedure.[2] (ECF No. 4.) On August 6, 2015, plaintiff filed applications for orders authorizing service on defendants by hand-delivery to the California Secretary of State. (ECF Nos. 5 & 6.) On August 10, 2015, plaintiff was authorized to serve defendants by hand-delivery to the California Secretary of State. (ECF Nos. 8 & 9). Plaintiff filed proofs of service on September 8, 2015. (ECF Nos. 10 & 11).

On September 24, 2015, plaintiff requested entry of defendants' default. (ECF Nos. 12 & 13). The Clerk entered defendants' default on September 25, 2015. (ECF Nos. 14 & 15). Plaintiff filed a motion for default judgment on April 11, 2016, and was heard before the previously assigned Magistrate Judge on May 26, 2016. (ECF Nos. 18-19). On May 27, 2016, the previously assigned Magistrate Judge denied the motion without prejudice.[3] (ECF No. 20.)

---

[1] Page number citations such as this, are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[2] Rule 4(m) was amended Dec. 1, 2015, to reduce the time for service of a summons from 120 days to 90 days. For any civil case commenced and pending prior to Dec. 1, 2015, as here, the parties have 120 days to serve their summons. Fed. R. Civ. P. 4(m).

[3] The matter was reassigned from the previously assigned Magistrate Judge to the undersigned on August 2, 2016. (ECF No. 21.)

On September 13, 2017, plaintiff filed the motion for default judgment at issue here. (ECF No. 23.) Notice of plaintiff's motion was served on the defendants at the California Secretary of State. (ECF No. 23-13.) At the motion hearing held on October 13, 2017, no appearance was made on behalf of either defendant.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing. Dundee, 722 F.2d at 1323. Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion. Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d. 1089, 1092 (9th Cir. 1980). The court is free to consider a variety of factors in exercising its discretion. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Among the factors that may be considered by the court are

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

ANALYSIS

I. **Appropriateness of the Entry of Default Judgment Under the Eitel Factors**

Plaintiff's motion for default judgment seeks judgment on two of the four claims presented in the complaint: a cause of action under Title III of the ADA, and a cause of action under the California Unruh Civil Rights Act. (Pl.'s MDJ (ECF No. 18-1) at 6-11.)

A. **Applicable Legal Standards under the ADA**

"Congress enacted the ADA 'to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities.'" Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc., 603 F.3d 666, 669 (9th Cir. 2010) (quoting 42 U.S.C. § 12101(b)(2)). "Title III of the ADA prohibits discrimination in public accommodations, stating that '[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.'" Kohler v. Bed Bath & Beyond of California, LLC, 780 F.3d 1260, 1263 (9th Cir. 2015) (quoting Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007)).

With respect to an existing facility, discrimination includes "a failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Removal is readily achievable where it is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of plaintiff's disability." Molski, 481 F.3d at 730.

"Damages are not an available remedy to individuals under Title III of the ADA; individuals may receive only injunctive relief." Ervine v. Desert View Regional Medical Center Holdings, LLC, 753 F.3d 862, 867 (9th Cir. 2014). "[A]n ADA plaintiff can establish standing to sue for injunctive relief either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." Chapman v. Pier 1 Imports (U.S.)

Inc., 631 F.3d 939, 944 (9th Cir. 2011) (en banc).

**B.     Analysis**

Here, the factual allegations of plaintiff's complaint, taken as true pursuant to the entry of default against the defendants, establish the following.

Plaintiff is a C-5 quadriplegic who cannot walk and has significant manual dexterity impairments, and requires the use of a wheelchair for mobility. (Compl. (ECF No. 1) at 1.) Defendants own and operate the business "Top Auto Repair" located at or about 2916 Northgate, Sacramento, California. (Id. at 2.) "Top Auto Repair" is a business establishment and place of public accommodation. (Id. at 3.) Plaintiff made a purchase at "Top Auto Repair" in August of 2014 and personally encountered numerous barriers to his ability to patronize the public service establishment. (Id. at 4.)

Those barriers included, but are not limited to:

1.     No compliant handicapped parking space:
     a.     Severely faded "wheelchair logo" (International Symbol of Accessibility),
     b.     Lack of "NO PARKING" lettering on the access aisle,
     c.     Lack of blue border around required access aisle,
     d.     Lack of "Minimum Fine $250" signage,
     e.     Lack of tow-away signage in the parking lot;

2.     The entry door hardware required tight grasping or twisting to operate;

3.     The countertop for customer transactions was well in excess of 36 inches in height;

4.     Non-compliant restroom fixtures and installations:
     a.     The restroom mirror's bottom edge was 49 inches above the floor;
     b.     The restroom sink provided no knee clearance for wheelchair users;
     c.     The toilet in the restroom was without grab bars;
     d.     There was no clear floor space in front of the disposable toilet seat cover dispenser.

(Id. at 3.)

////

Because of plaintiff's knowledge of these barriers, he was deterred from patronizing "Top Auto Repair" on several other occasions in 2014. (Id. at 4.) Plaintiff experienced difficulty, discomfort, and embarrassment due to the lack of accessible facilities at "Top Auto Repair". (Id.) As a consequence, plaintiff was denied full and equal access to facilities, privileges, and accommodations offered by the defendants. (Id.)

A consideration of the Eitel factors favors granting default judgment for the reasons outlined below. Eitel, 782 F.2d 1470 at 1471.

### 1. Factor 1: The Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. When a defendant has failed to appear and defend the claims, a plaintiff will be without recourse and suffer prejudice unless default judgment is entered. Vogel v. Rite Aid Corp., 992 F.Supp.2d 998, 1007 (C.D. Cal. 2014) (granting a default judgment for a disabled plaintiff suing under the ADA and Unruh, relying upon this rationale). Here, the defendants have failed to appear and defend against plaintiff's claims of discrimination under the ADA and the Unruh Act. Because plaintiff will suffer prejudice if plaintiff is without recourse against the defendants in this case, this factor favors entry of a default judgment.

### 2. Factors 2 & 3: The Merits and Sufficiency of Plaintiff's Claims

The second and third Eitel factors require that a plaintiff state a claim on which they can recover. Eitel, 782 F.2d 1470 at 1471. Here, plaintiff's complaint pleads causes of action for alleged violation(s) of the ADA, the Unruh Act, the CDPA, and negligence. (Compl. (ECF No. 1) at 5-9.) Plaintiff's motion seeks default judgment on only the ADA claim and Unruh Act claim. (Pl.'s MDJ (ECF No. 23) at 6-11.) Therefore, only these two claims will be evaluated below.

#### a. Standing Under Title III of the ADA

To invoke federal jurisdiction and the standing to sue, a disabled individual claiming discrimination under the ADA must satisfy the case or controversy requirement of the U.S. Constitution Art. III. Chapman, 631 F.3d at 946. In general, a plaintiff must demonstrate that (1) he has suffered an injury-in-fact, (2) that the injury is traceable to the defendant's actions, and (3)

that the injury can be redressed by a favorable decision. Additionally, to establish standing to pursue injunctive relief, a plaintiff must demonstrate a "real and immediate threat of repeated injury" in the future. Id. An ADA plaintiff suffers an injury-in-fact either because discriminatory architectural barriers deter him from returning to a facility or because they otherwise interfere with his access to and "full and equal enjoyment" of the facility. Id. at 950. An ADA plaintiff demonstrates a sufficient likelihood of future harm when he intends to return to a noncompliant place of public accommodation where he will likely suffer repeated injury. Id. at 948.

Here, plaintiff's motion for default judgment seeks injunctive relief compelling defendants to remove the architectural barriers at defendants' place of public accommodation, "Top Auto Repair." (Pl.'s MDJ. (ECF No. 23-1) at 11.) Plaintiff suffered from an injury-in-fact because discriminatory architectural barriers deterred plaintiff from returning to "Top Auto Repair", and because the discriminatory architectural barriers interfered with plaintiff's access to, and full and equal enjoyment of, the "Top Auto Repair" premises. (Compl. (ECF No. 1) at 3-4.)

Plaintiff also demonstrated a sufficient likelihood of future harm because plaintiff intended to return to the defendants' service establishment, and because plaintiff would likely suffer repeated injury when returning to the non-compliant premises. (Id.) The plaintiff lives just ten minutes from "Top Auto Repair," consistently frequents the general area, and will continue to do so in the future. (Id.) "Top Auto Repair's" architectural barriers were purportedly the cause of the denial of access, and this was allegedly intentional on the part of the defendants. (Id.) Finally, an award of injunctive relief would redress plaintiff's injuries. Therefore, plaintiff has established Article III standing to sue for injunctive relief under the ADA.

### b. Discrimination Under Title III of the ADA

To prevail on a Title III discrimination claim, (1) plaintiff must be disabled within the meaning of the ADA; (2) defendant must be a private entity that owns, leases, or operates a place of public accommodation; and (3) plaintiff must have been denied public accommodations by defendant because of their disability. Molski, 481 F.3d at 730.

Here, plaintiff Johnson meets all three elements to succeed on the Title III ADA claim, based on the facts alleged in the complaint. (Compl. (ECF No. 1) at 3.) The term "disability"

with respect to an individual is defined as a physical (or mental) impairment that substantially limits one or more major life activities of such individual. 42 U.S.C. § 12102(2)(A). Here, plaintiff cannot walk and uses a wheelchair for mobility. (Id. at 1.) Therefore, plaintiff is disabled within the meaning of the ADA.

Second, defendants are private entities who own and operate the business "Top Auto Repair", a service establishment. (Id. at 2.) Service establishments are expressly identified as places of public accommodation. 42 U.S.C. § 12181(7)(F). Therefore, "Top Auto Repair" is a place of public accommodation and subject to Title III of the ADA.

Third, plaintiff was denied public accommodations by the defendants because of plaintiff's disability. In the present case, the alleged lack of accessible parking spaces, entry door hardware, transaction counter, and restroom facilities were barriers to the plaintiff that prevented, and continues to prevent, the full use and enjoyment of the public service establishment owned and operated by defendants. (Compl. (ECF No. 1) at 3-4.)

A public accommodation that provides parking spaces to its patrons must reserve some spaces for individuals with disabilities, and these spaces must be identified by a legible International Symbol of Accessibility. 36 CFR Part 1191 App. D § 703.7.1. Here, plaintiff alleges that accessible parking spaces were available at "Top Auto Repair", but that they were non-compliant with ADA regulations. (Compl. (ECF No. 1) at 3.) The failure to provide properly designated, accessible parking spaces is a barrier, thus constituting discrimination. [4]

ADAAG standards provide that handles, pulls, latches, locks, and other operable parts on doors be operable with one hand and shall not require tight grasping, pinching or twisting of the wrist. 36 CFR Part 1191 App. D § 309.4. Here, the door hardware at the entrance is a panel style handle. (Compl. (ECF No. 1) at 3; ECF No. 23-6 at 4.) A panel style handle is a barrier for disabled individuals, because it requires "the user to tightly grasp the handle to open the door." Wilson v. Pier 1 Imps. (US), Inc., 439 F. Supp. 2d 1054 at 1072 (E.D. Cal. 2006) (quoting ADA Guide for Small Businesses at 8.) Thus, the presence of a panel style handle at the entrance of

---

[4] Barriers are determined by reference to the ADA Accessibility Guidelines (ADAAG). Chapman, 631 F.3d 939 at 945. The ADAAG are listed in 36 CFR Part 1191 Appendix D.

8

"Top Auto Repair" constitutes discrimination.

ADAAG standards provide that counter surfaces for transactional purposes shall be 38 inches maximum above the floor. 36 CFR Part 1191 App. D § 904.3.2. Here, the transaction counter was "well in excess of 36 inches in height", over the 38 inch maximum limit. (Compl. (ECF No. 1) at 3; ECF No. 23-6 at 4.) Thus, the inaccessible transaction counter constitutes discrimination.

ADAAG standards state that where toilet facilities are provided, each public and common use toilet room must be accessible. Specifically, mirrors located above countertops shall be installed with the bottom edge of the reflecting surface a maximum of 40 inches above the ground. 36 CFR Part 1191 App. D § 603.3. Here, the restroom mirror was mounted on the wall so that its bottom edge is approximately 49 inches above the floor, in excess of the 40 inch maximum limit. (Compl. (ECF No. 1) at 3; ECF No. 23-6 at 4.) In addition, restroom sink countertops must have knee clearance at least 27 inches high, 30 inches wide, and 19 inches deep. 1 ADA: Public Accommodations § 5.04; 36 CFR Part 1191 App. D § 306.3. Here, the restroom sink was a cabinet style sink without any knee clearance. (Compl. (ECF No. 1) at 3; ECF No. 23-6 at 4.)

Moreover, grab bars must be installed in toilet facilities according to specifications described in 36 CFR Part 1191 App. D § 609 in order to facilitate the transfer of a disabled individual to the toilet. Here, there were no grab bars installed in the restroom whatsoever. (Compl. (ECF No. 1) at 3; ECF No. 23-6 at 5.) ADAAG standards generally require that clear floor or ground space (30 inches minimum by 48 inches minimum) shall be positioned for either a forward or parallel approach to an operable element. 36 CFR Part 1191 App. D § 309.2. Here, there was no clear floor space in front of the disposable toilet seat cover (an operable element) because it was mounted on the wall behind the toilet. (Compl. (ECF No. 1) at 3; ECF No. 23-6 at 5.) These inaccessible restroom features at "Top Auto Repair" are barriers that constitute discrimination.

////

////

On information and belief, plaintiff alleges that the defendants' failure to remove the barriers was intentional because the barriers are "intuitive and obvious", and because the defendants exercised complete control over "Top Auto Repair's" conditions. (Compl. (ECF No. 1) at 4.) Therefore, removal of these barriers was "readily achievable" by the defendants, and defendants' failure to do so constitutes discrimination under the ADA. 42 U.S.C. § 12182(b)(2)(A).

In sum, the complaint sufficiently alleges a Title III discrimination claim. Accordingly, the merits of plaintiff's substantive claim and the sufficiency of the complaint weigh in favor of granting default judgment.

### b. Discrimination Under the California Unruh Act

The California Unruh Civil Rights Act ("Unruh Act") provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). Moreover, the Unruh Act provides that a "violation of the right of any individual under the federal Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Cal. Civ. Code § 51(f) (citation and footnote omitted).

As expressly provided by statute, a violation of the ADA also constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f); see also Munson v. Del Taco, Inc., 46 Cal.4th 661, 664-65 (Cal. 2009). Here, because plaintiff's complaint properly alleges a claim under the ADA, plaintiff has also properly alleged facts supporting a claim under the Unruh Act. This factor weighs in favor of a default judgment.

### 3. Factor 4: The Sum of Money at Stake

Under this Eitel factor, the court "must consider the amount of money at stake in relation to the seriousness of defendant's conduct." PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1176-77 (C.D. Cal. 2002). Plaintiff's motion for default judgment seeks a grand total of $16,500, which includes statutory damages under the Unruh Act corresponding to three

obstructed visits to "Top Auto Repair" ($4,000 minimum statutory damages per visit), in addition to $4,500 in attorney fees and filing costs.). Although the requested statutory damages, attorney's fees, and costs are more closely scrutinized below, the undersigned does not find the overall sum of money at stake to be so large or excessive as to militate against the entry of default judgment, particularly when reduced for the reasons discussed below. The undersigned concludes that this factor weighs in favor of a default judgment.

### 4. Factor 5: The Possibility of Dispute

The fifth Eitel factor "considers the possibility of dispute as to any material facts in the case. Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." Pepsico, 238 F. Supp. 2d at 1177. Here, there appear to be no material facts in dispute; therefore, this factor weighs in favor of a default judgment.

### 5. Factor 6: The Possibility of Excusable Neglect

There is no indication in the record that defendants' default was due to excusable neglect. Defendants were properly served with plaintiff's summons and complaint, with plaintiff's request for entry of default, and with plaintiff's motion for default judgment. (ECF No. 2; ECF No. 10; ECF No. 11; ECF No. 12; ECF No. 13; ECF No. 18.) Thus, the record suggests that defendants have chosen not to defend themselves in this action, and that the default did not result from excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

### 6. Factor 7: Policy Favoring Decision on the Merits

This Eitel factor always weighs against default judgment, since a default judgment would preclude a judgment on the merits. "Cases should be decided on their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. Although public policy generally favors the resolution of a case on its merits, as here, a defendant's failure to appear and defend against a plaintiff's claims makes a decision on the merits impossible. PepsiCo, Inc., 238 F. Supp. 2d at 1177.

### 7. Summary of Eitel Factors

In sum, upon consideration of all the Eitel factors, the undersigned concludes that plaintiff is entitled to a default judgment against defendants and recommends that such a default judgment

be entered. The undersigned therefore turns to plaintiff's requested damages and injunctive relief.

**II.     Terms Of Judgment To Be Entered**

After determining that entry of default judgment is warranted, the court must next determine the terms of the judgment. See Landstar Ranger, Inc. v. Parth Enterprises, Inc., 725 F.Supp.2d 916, 920 (C.D. Cal. 2010) ("If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the 'amount and character' of the relief that should be awarded.").

**A.     Statutory Damages**

Plaintiff's motion for default judgment seeks $12,000 in statutory damages. (Pl.'s MDJ. (ECF No. 23-1) at 11.) "Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages or statutory damages of $4,000 per violation." Vogel, 992 F. Supp. 2d 998 at 1011. Plaintiff's declaration states that he visited "Top Auto Repair" in "August of 2014 and several other occasions in late 2014", and was deterred from further attempts to visit "Top Auto Repair" by the barriers that were encountered during his visit. (Johnson Decl. (ECF 23-5) at 2-3.) Pursuant to California Civil Code § 55.56(b) "[a] plaintiff is denied full and equal access only if the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion."

Plaintiff's motion for default judgment seeks an award for three statutory minimum penalty assessments of $4,000 each—for $12,000 in total—for two visits in July 2014 and one visit in August 2014. (Pl.'s MDJ. (ECF No. 23-1) at 11.) Neither plaintiff's complaint nor declaration, however, refer to any visits in July of 2014. When asked about this discrepancy at the October 13, 2017 hearing, plaintiff's counsel asked that the court simply award plaintiff $4,000 for the August 2014 visit.

Accordingly, the undersigned will recommend plaintiff be awarded $4,000 in statutory damages for the single documented visit to "Top Auto Repair" in August of 2014.

////

////

**B.     Injunctive Relief**

Under Title III of the ADA, individuals may only receive injunctive relief. Ervine, 753 F. 3d at 867; Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA -- only injunctive relief is available for violations of Title III."). Plaintiff's motion for default judgment seeks injunctive relief compelling the defendants to comply with the ADA and the Unruh Act by remedying the architectural barriers that exist on the premises of "Top Auto Repair". (Pl.'s MDJ (ECF No. 23-1) at 6; Compl. (ECF No. 1) at 3.)

Having found that plaintiff both has standing and has established that defendants violated the ADA, the undersigned recommends that plaintiff's request for injunctive relief be granted, and defendants be ordered to correct those architectural barriers at "Top Auto Repair" identified in plaintiff's complaint, to the extent defendants have the legal right to do so, so that the facility is readily accessible to and usable by individuals with disabilities. See Vogel, 992 F. Supp. 2d at 1015 ("Injunctive relief compelling Knight to remove barriers at Rite Aid to the extent he has the legal right to do so under the lease and state law so that the facility is readily accessible to and usable by individuals with disabilities is therefore appropriate.").

**C.     Attorneys' Fees**

Plaintiff's motion for default judgment seeks an award of $4,500 in attorney fees.[5] (Pl.'s MDJ (ECF No. 23-1) at 11.) Pursuant to 42 U.S.C. § 12205, a party that prevails on claims brought under the ADA may recover reasonable attorney's fees and costs in the court's discretion. The fee award is typically calculated using the lodestar method. Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149, n.4 (9th Cir. 2001).

"The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expected on the litigation by a reasonable hourly rate." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

////

---

[5] Plaintiff's counsel's argument in support of an award of attorney fees is that "it is inappropriate to use the default fee schedule under Local Rule 55" in ADA cases. (ECF No. 23-1 at 14-15.) There is neither a Local Rule 55 nor a default fee schedule in this district.

The lodestar is deemed to be presumptively reasonable, though the district court has the discretion to consider an upward or downward adjustment. Camacho, 523 F.3d at 978.

### 1. Reasonable Hourly Rates

In assessing applications for attorney's fees the reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant legal community. Blum v. Stenson, 465 U.S. 886, 895 (1984); see also Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011) ("We have held that '[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'") (quoting Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210-11 (9th Cir. 1986)). It is also the general rule that the "relevant legal community" is the forum district and that the local hourly rates for similar work should normally be employed. See Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013); Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010); Gates v. Rowland, 39 F.3d 1439, 1449 (9th Cir. 1994); Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).

Here, plaintiff's counsel Mark Potter seeks an hourly billing rate of $350, which he claims is a fair rate for attorneys with similar experience and expertise with ADA cases. (Potter Decl. (ECF No. 23-4) at 4.) In support of this request, plaintiff's counsel has submitted five exhibits of fee awards ordered by judges in similar cases. (ECF Nos. 23-8, 23-9, 23-10, 23-11, 23-12.) None of those judges, however, reside in the present forum (Eastern District of California). Moreover, counsel's declaration refers to "Johnson v. Bai," in support of the assertion that "[n]umerous federal and state court judges have approved my billing rate," without providing a citation. (Potter Decl. (ECF No. 23-4) at 4.)

Accordingly, at the October 13, 2017, hearing the undersigned informed plaintiff's attorney, Raymond Ballister, that no citation was provided for attorney Potter's reference to Johnson v. Bai, and that the Johnson v. Bai opinion found by the undersigned did not support attorney Potter's assertion that a recent Eastern District case approved attorney Potter's requested billing rate of $350 per hour. See Johnson v. Xinliang Bai, CIV. NO. 2:16-1698 WBS GGH, 2017 WL 3334006, at *4 (E.D. Cal. Aug. 4, 2017) ("the court finds that the reasonable rates are

$300 for Potter, $250 for Grace, and $150 for Price and Gunderson"). The undersigned asked attorney Ballister if counsel could provide the court with a citation to the case referred to by attorney Potter. Attorney Ballister answered that such citation could not be provided without additional legal research. The undersigned then asked attorney Ballister to address the determination of a reasonable hourly rate. Attorney Ballister stated that a reasonable hourly rate would be $250 per hour and amended plaintiff's requested attorney hourly rate to $250 per hour. (ECF No. 26 at 2.)

The undersigned finds plaintiff's amended requested rate of $250 per hour to be reasonable. See Johnson v. Patel, No. 2:15-cv-2298 MCE EFB, 2017 WL 999462, at *3 (E.D. Cal. Mar. 15, 2017) ("No evidence has been presented in this proceeding that causes this Court to conclude that the prevailing Sacramento rate of $250-$300 as recently as two years ago has measurably increased."); Loskot v. D & K Spirits, LLC, No. 2:10-cv-0684 WBS DAD, 2011 WL 567364, at *5 (E.D. Cal. Feb. 15, 2011) (citing Eastern District ADA cases resolved on default judgment where $250 was determined to be the reasonable rate).

### 2. **Hours Reasonably Expended**

A prevailing party is entitled to compensation for attorney time "reasonably expended *on the litigation*." Webb v. Board of Educ. of Dyer County, 471 U.S. 234, 242 (1985) (emphasis in original). The attorney's fee applicant bears the burden of establishing the appropriate number of hours expended. Hensley, 461 U.S. at 437; see also Jadwin v. County of Kern, 767 F.Supp.2d 1069, 1100 (E.D. Cal. 2011) ("The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked.").

Time is reasonably expended on the litigation when it is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986) (citation and internal quotations omitted). "'Hours expended on unrelated, unsuccessful claims should not be included in an award of fees.'" Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir. 2003) (quoting Sorenson v. Mink, 239 F.3d 1140, 1147 (9th Cir. 2001)).

////

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley, 461 U.S. at 434; see also Jankey v. Poop Deck, 537 F.3d 1122, 1132 (9th Cir. 2008) ("Consequently, although the district court erred in considering Plaintiff's protraction of the litigation in deciding whether to deny fees, the court may consider whether Plaintiff protracted the litigation in deciding whether to reduce fees."); Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008) ("The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client."); Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) ("A district court should exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary.").

"'[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of excluding non-compensable hours from a fee application.'" Gonzalez v. City of Maywood, 729 F.3d 1196, 1203 (9th Cir. 2013) (quoting Gates, 987 F.2d at 1399). "[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." Moreno, 534 F.3d at 1112. "In all other cases, however, the district court must explain why it chose to cut the number of hours or the lodestar by the specific percentage it did." Gonzalez, 729 F.3d at 1203.

Here, plaintiff's counsel states that "a total of 11.6 hours of time" was spent on this case. (Potter Decl. (ECF No. 23-4) at 3.) The undersigned finds 11.6 hours to be a reasonable amount of time to spend on a case of this nature. See, e.g., Trujillo v. Ali, Case No. 1:16-cv-0694 LJO SKO, 2016 WL 6902313, at *10 (E.D. Cal. Nov. 23, 2016) (roughly 25 hours expended through filing of motion for default judgment); Johnson v. Lababedy, No. 2:16-cv-0126 KJM AC, 2016 WL 4087061, at *11 (E.D. Cal. Aug. 2, 2016) (9.2 hours expended through filing of motion for default judgment); Loskot v. D & K Spirits, LLC, No. 2:10-cv-0684 WBS DAD, 2011 WL

567364, at *4 (E.D. Cal. Feb. 15, 2011) (17.3 hours expended through filing of motion for default judgment).

### D. Costs

Plaintiff's motion for default judgment seeks costs in the amount of $440. (ECF Nos. 23-1 at 11, and 23-4 at 3.) "Both the Unruh Act and the ADA authorize a prevailing plaintiff to recover . . . costs." Vogel, 992 F. Supp. 2d at 1016 (citing 42 U.S.C. § 12205; Cal. Civ. Code § 52(a)). Therefore, the undersigned recommends that plaintiff be awarded $440 in costs.

Accordingly, the undersigned will recommend that plaintiff be awarded $2,900 in attorney's fees and costs, based on an hourly rate of $250 for 11.6 hours, along with $440 in filing fees and costs.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's September 13, 2017 motion for default judgment (ECF No. 23) be granted;

2. Judgment be entered against the defendants, Top Investment Property LLC and Top Auto Repair, Inc.;

3. Defendants be ordered to pay $4,000 in statutory damages;

4. Defendants be ordered to correct the violations at the "Top Auto Repair" identified in plaintiff's complaint, to the extent that the defendants have the legal right to do so, so that the facility is readily accessible to and usable by individuals with disabilities;

5. Defendants be ordered to pay plaintiff $2,900 in attorneys' fees;

6. Defendants be ordered to pay plaintiff $440 in costs; and

7. This case be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after these findings and recommendations are filed, any party may file written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.

The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 16, 2018

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:E(ab)
DB\orders\orders.civil\johnson0181.mdj.f&rs.ab